UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-245 (NEB/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) **GOVERNMENT'S POSITION WITH** |
| | ) **RESPECT TO SENTENCING** |
| MUSE MOHAMUD MOHAMED, | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Angela M. Munoz, Kimberly A. Svendsen and Allison K. Ethen, Assistant United States Attorneys, submits this memorandum in connection with the sentencing of defendant Muse Mohamud Mohamed.

On May 10, 2022, following a two-day jury trial, Mohamed was found guilty of two counts of making false statements before the grand jury. In connection with the August 2020 primary election in Minneapolis, Mohamed submitted agent delivery ballots on behalf of three voters who neither filled out those ballots nor asked Mohamed or anyone to submit ballots on their behalf. Mohamed lied to the grand jury by claiming that he obtained the three ballots from the voters themselves, and he therefore concealed from the grand jury where he actually got the ballots.

As of this writing, Mohamed has never provided the government with truthful information about the source of these ballots. Mohamed's decision to incur a felony conviction rather than identify the person who gave him the ballots strikes at the heart of the proper functioning of the criminal justice system. The government seeks a sentence

within the applicable Sentencing Guidelines range, which is appropriate to the criminal conduct for which Mohamed was found guilty, including the need to deter Mohamed and others from lying under oath.

## Mohamed's Criminal Conduct

The evidence the government presented at trial proved the following facts:

**1.    The August 11, 2020 Primary Election**

The State of Minnesota held a primary election on August 11, 2020. (Trial Tr. Vol. I at 38:7-9.) The ballot contained a number of party candidates for various local, state, and federal offices. (*Id.* at 39:2-14.) Within certain wards and precincts of the City of Minneapolis, the ballot also contained primary candidates for the Minnesota State Senate. (*Id.*)

One method that voters were permitted to use under certain circumstances to vote in the August 2020 election was called "Agent Delivery." (*Id.* at 42-43 & Gov't Ex. 21.) Voters could be eligible to vote via agent delivery for specified reasons, including if the voter "live[d] in a nursing home, an assisted living home, a battered women's shelter, a group home, or the voter could be in the hospital, or the voter could have some like health reason where they were unable to go to their polling place on election day." (Trial Tr. Vol. I at 43:16-22.)

Pursuant to Minnesota state law, voters with "incapacitating health reasons" or disabilities may apply for agent delivery of their absentee ballot. (Gov't Ex. 17.) To vote absentee via agent delivery, the voter may select an agent to act on his or her behalf. (Trial Tr. Vol. I at 43-15 & Gov't Ex. 21.) The agent must be at least 18 years old, have a pre-

existing relationship with the voter, and cannot be a candidate in the election. (*Id.*) Upon selecting an agent, the voter must fill out (1) an application requesting an absentee ballot and (2) a request for agent delivery of absentee ballot form. (Trial Tr. Vol. I at 44-48.) The agent then takes both documents to the election office where election officials can release the voter's absentee ballot to the agent. (*Id.* at 48-49.) The agent must then deliver the absentee ballot to the voter, the voter then votes and seals the absentee ballot in an envelope, and thereafter the agent returns the absentee ballot to the election office on the voter's behalf. (*Id.* at 49.)

Importantly, as part of the agent delivery process, as with any other method of voting, the voter must vote his or her own ballot. (*Id.* at 49:9-10 & 78:21-29:4.) The agent delivery process does not permit anyone to vote a ballot without the voter's knowledge or to circumvent the "one person, one vote" principle that underlies the democratic process. (*Id.*)

**2.     Muse Mohamed's False Grand Jury Testimony**

As part of an investigation into the use of the agent delivery process during the August 11, 2020 primary election, Defendant Muse Mohamed was served with a subpoena to provide testimony before a grand jury seated in the District of Minnesota. (Trial Tr. Vol. II at 131:2-4.) The City of Minneapolis' election records document that Mohamed delivered three ballots as an agent for three voters during the August 11, 2020 primary election. The three voters, however, do not know Mohamed and did not ask him to pick up and deliver absentee ballots for them. (Trial Tr. Vol. I at 83:22-84:2 (testimony of N.J.) and 108:8-12 (testimony of A.M.).) One of the ballots that Mohamed attempted to return

3

to the City of Minneapolis was ultimately rejected because the voter had voted in person at her polling place. (*Id.* at 63-64.)

Mohamed appeared before the grand jury on both September 30, 2021, and October 14, 2021. (Trial Tr. Vol. II at 135:22-25.) During both appearances, Mohamed was asked about the three ballots that he purportedly picked up at the request of three voters, delivered to the three voters, had the voters vote the ballots, and then returned the ballots to election officials. (Gov't Exs. 1 & 4.) On October 14, 2021 alone, Mohamed was asked dozens of times how and from whom he obtained the absentee ballots for the three voters. (Gov't Ex. 1.) Many of Mohamed's answers to the questions were simply nonresponsive. He gave long and detailed explanations for the process and procedures by which a non-specific voter could obtain an absentee ballot. (*Id.*)

Ultimately, Mohamed stated he received the three absentee ballots from the voters themselves. (Gov't Exs. 2 & 3.) When confronted with the fact that the voters each gave statements that they do not know Mohamed and that they did not ask him or anyone for agent delivery of their ballots for the August 2020 election, Mohamed continued to stand by his answer that he received the ballots from the voters. (Gov't Ex. 1 at 40-41.)

## The Applicable Advisory Sentencing Guidelines Range

The government objects to the PSR's calculation of the advisory Sentencing Guidelines Range in this case. The PSR calculated Mohamed's total offense level as 14 and his criminal history category as I. (PSR ¶¶ 32 & 37.) This calculation resulted in an advisory Sentencing Guidelines range of 15 to 21 months' imprisonment. (*Id.* ¶ 71.)

However, an additional 3-level enhancement should apply because Mohamed's false statements to the grand jury resulted in substantial interference with the administration of justice. U.S.S.G. § 2J1.3(b)(2). The Application Notes to Guidelines Section 2J1.3 define "substantial interference with the administration of justice" as including "a premature or improper termination of a felony investigation" or "the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.3, App. Note 1. In this case, Mohamed's false grand jury testimony resulted in both an improper termination of a felony investigation into whether the three ballots Mohamed submitted through the agent delivery process were submitted without the voters' knowledge and, if so, who filled out the ballots and directed that they be submitted without voters' knowledge, and it also resulted in the unnecessary expenditure of substantial government and court resources.

"An enhancement for 'substantial interference with the administration of justice' is proper in many instances—including a perjury case." *United States v. Dudley*, 941 F.2d 260, 265 (4th Cir. 1991) (collecting cases, and rejecting defendant's argument that such an enhancement is inappropriate because "perjury is per se substantial interference with the administration of justice"). "In some cases, when the defendant has concealed evidence and is the only known source of information, substantial interference with the administration of justice may be inferred." *United States v. Jones*, 900 F.2d 512, 522 (9th Cir. 1990) (remanding for resentencing where district court did not make specific findings about reasons for application of §2J1.3(b)(2)).

In this case, the government presented sufficient evidence at trial for the Court to conclude that Mohamed's false grand jury testimony resulted in the improper termination of a felony investigation into who filled out the ballots of the three voters for whom Mohamed delivered ballots and who directed Mohamed to deliver the ballots without the voters' knowledge. The government's case agent testified that the focus of the investigation was "whether or not through the absentee agent delivery process ballots were being turned in without the voters' knowledge and, if so, who was filling out those ballots and giving the direction to do so." (Trial Tr. Vol. II at 134:4-8.)

In finding Mohamed guilty, the jury found beyond a reasonable doubt that Mohamed lied when he testified that he obtained the three ballots from the voters themselves. In other words, the jury concluded that the three voters in whose names Mohamed delivered ballots in connection with the August 2020 primary did not ask Mohamed—or anyone—to deliver ballots on their behalf and were not aware that anyone had done so. (*See*, *e.g.*, Trial Tr. Vol. I at 83:22-84:2 (testimony of N.J.) and 108:8-12 (testimony of A.M.).) Mohamed delivered these three ballots, and he knows who gave the ballots to him. Mohamed lied to the grand jury, and to date, no one has been charged with fraudulently filling out these three ballots without the voters' knowledge.

In addition, Mohamed's false statements to the grand jury resulted in the unnecessary expenditure of government resources. Among other unnecessary expenditures of time and resources, the government's case agent testified at trial that after Mohamed lied in the grand jury on September 30, 2021, the government re-subpoenaed Mohamed and had him testify before the grand jury a second time, on October 14, 2021, because

"[t]he grand jury felt that he still had more information to provide and to give him an opportunity to provide full answers to the questions and tell the truth." (Trial Tr. Vol. II at 135:22-25 and 162:3-7.) Mohamed chose to persist in his false statements and returning him for a second session wasted both the government's and the grand jury's time. *See United States v. Serafini*, 233 F.3d 758, 771 (3d Cir. 2000) (affirming application of §2J1.3(b)(2) enhancement where court found government expended time re-interviewing witnesses and calling witness to testify before the grand jury a second time).

The government respectfully requests that the Court apply the three-level enhancement set forth in Sentencing Guidelines Section 2J1.3(b)(2) and find a total offense level of 17, a criminal history category of I, and an advisory Sentencing Guidelines range of 24 to 30 months' imprisonment.

## The Appropriate Sentence

The nature and circumstances of Mohamed's false statements to the grand jury in this case are serious. Mohamed refused to identify the person who provided him with the three ballots he submitted in connection with the August 11, 2020 primary election without the voters' knowledge. Instead, he lied and claimed that he received the ballots from the voters. Mohamed's lies were brazen, and they contradicted highly credible testimony from the voters that they did not ask Mohamed or anyone to deliver ballots on their behalf. Moreover, Mohamed's lies victimized three real voters whose rights were fundamentally violated by having their identities used to cast ballots without their permission.

As to the history and characteristics of the defendant, the PSR includes a number of facts that reflect positively on Mohamed. He overcame a very difficult background in

7

Somalia. Upon immigrating to the United States at age fifteen, and despite attending school in English while taking ESL courses, Mohamed did well in school. After graduating from high school, he received a bachelor's degree from Metropolitan State University. He is helping to raise two small children, including one with special needs. But commendable personal characteristics cannot be sufficient to permit Mohamed to avoid the consequences of his choice in this case to take on a felony conviction for the purpose of concealing the identity of the person or people who provided him with the fraudulent ballots.

The sentencing factors of specific and general deterrence require a substantial sentence in this case. To the extent that Mohamed and other witnesses the government subpoenas to testify under oath before the grand jury are engaging in an assessment of whether to lie in order to cover for others and risk a possible prison sentence, it is important to the functioning of our system of justice that such a prison sentence be waiting if the witnesses' lies are caught and prosecuted.

It was not the government's goal in this case to prosecute Muse Mohamed for making false statements to the grand jury. Instead of charging Mohamed with making false statements after he lied under oath to the grand jury on September 30, 2021, the government gave him a second chance to return to the grand jury and tell the truth. The government did so because rather than seeking to catch Mohamed in a lie and charge him, the government was seeking to find out the truth about what happened with regard to the three ballots that Mohamed submitted without the voters' knowledge. Mohamed knows who gave him the ballots, but instead of answering the government and the grand jurors' questions truthfully, he chose to lie and cover up for that person. He did so even though

he was warned that he could be charged with crimes if he lied to the grand jury, and he has persisted in doing so to this day.

Taking into consideration the Sentencing Guidelines, as well as the other factors required to be considered under § 3553(a), the United States respectfully suggests that a sentence within the appropriate applicable Sentencing Guidelines range—appropriately reflects the seriousness of Mohamed's crime while taking into account his mitigating circumstances, promotes respect for the law, provides a just punishment, and will deter Mohamed and others from choosing to lie under oath in order to protect others from prosecution.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant, Muse Mohamed, to a sentence of imprisonment within the appropriate applicable Sentencing Guidelines range.

Dated: October 31, 2022                     Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Angela M. Munoz*

BY:  ANGELA M. MUNOZ
KIMBERLY A. SVENDSEN
ALLISON K. ETHEN
Assistant U.S. Attorneys